UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

DAVID ELLIS, )
)
        Plaintiff, )
) Case No. 1:06-CV-260
v. )
) Chief Judge Curtis L. Collier
BRADLEY COUNTY, TENNESSEE, )
)
        Defendant. )

**MEMORANDUM**

This matter is before the Court on the motion to dismiss filed by defendant Bradley County ("Defendant") (Court File No. 10), with supporting memorandum (File No. 12). Plaintiff David Ellis ("Plaintiff") timely responded (File No. 13). Defendant replied on March 22, 2007 (File No. 14). Defendant argues Plaintiff's employment discrimination and retaliatory firing complaint should be dismissed because Defendant was not Plaintiff's employer. Rather, Defendant asserrs Plaintiff was an employee of the State of Tennessee and therefore the State is liable for any illegal employment actions. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4). The Court agrees with Defendant's construction of the applicable statutes and cases, and will **GRANT** Defendant's motion (File No. 10).

**I.    FACTS**

Plaintiff filed this suit on December 7, 2006 (File No. 1). The complaint alleges Defendant first impermissibly refused to accommodate Plaintiff and then terminated Plaintiff because of his medical needs. The following fact summary is drawn from the complaint (File No. 1):

Plaintiff was employed as Administrator of Elections ("Administrator") by Defendant's Election Commission. Defendant is covered by the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* Plaintiff was entitled to, requested, and took FMLA leave in April 2006. When Plaintiff returned to work in June 2006 pursuant to a doctor's release, Defendant refused to reinstate him to his former position (*id.* at ¶¶ 6-18). Plaintiff also suffers from Crohn's Disease. He is otherwise qualified for the Administrator position, but is disabled and requires reasonable accommodation. Defendant allegedly refused to accommodate him. Defendant replaced Plaintiff with a non-disabled individual (*id.* at ¶¶ 19-26).

Plaintiff claims to have complained of and opposed Defendant's discriminatory acts and to have properly requested accommodation. Defendant purportedly reinstated Plaintiff to his position, but then immediately suspended him. Plaintiff was officially terminated on October 6, 2006. Plaintiff alleges his opposition to Defendant's discriminatory practices was a substantial factor in Defendant's decision to terminate him (*id.* at ¶¶ 27-30).

The complaint alleges additional claims of differential treatment, adverse employment action, and violations of the Tennessee Human Rights Act, the Tennessee Handicap Act, and other State laws (*id.* at ¶¶ 31, 32, 35). Finally, the complaint alleges Defendant violated the requirements of the Tennessee Open Meetings Act, Tenn. Code Ann. § 8-44-101, *et seq.* (*id.* at ¶ 37). Plaintiff requests compensatory damages, reinstatement or front pay, liquidated damages, punitive damages, attorneys' fees, and interest (*id.* at § IV).

## II. APPLICABLE LAW

### A. Standard of Review

If subject matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), the party asserting jurisdiction bears the burden of establishing it, *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990), and of sufficiently pleading each element of Article III standing to support federal subject matter jurisdiction, *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002). Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed if it fails to state a claim for which relief may be granted. In evaluating the complaint pursuant to a 12(b)(6) motion, the Court must accept the complaint's allegations as true and must construe it in the plaintiff's favor. *Hishon v. King & Spalding LLP*, 467 U.S. 69, 73 (1984); *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997). A complaint will not be dismissed unless the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, – U.S. – , 127 S. Ct. 1955, 1974 (May 21, 2007) (quoting, altering the traditional 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To survive a motion to dismiss, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 1965. This Court need not accept legal conclusions or unwarranted factual inferences. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (though the "standard for Rule 12(b)(6) is quite liberal, more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements"); *Tritent Int'l Corp. v. Kentucky*, 467 F.3d 547, 554 (6th Cir. 2006).

**B.  Statutory Requirements**

Resolution of this motion turns on whether Plaintiff, an appointed public official, was a county or State employee. There is conflicting authority. To the best of his knowledge, Plaintiff was a Bradley County employee – his paychecks were cut by the "Bradley County Executive" (File No. 13-2). However, in the motion to dismiss, Defendant points out code sections, case law, and State Attorney General opinions which suggest Plaintiff is functionally a State employee. On balance, the Court agrees with Defendant's interpretation and concludes Plaintiff is an employee of the State of Tennessee and not of Bradley County.

In *Durham v. Dismukes*, 333 S.W.2d 935 (Tenn. 1960), the Tennessee Supreme Court offered a test to help decide whether an official functions as a county or State employee. The court found a Sumner County General Sessions judge to be a county employee based on consideration of (1) whether the county or State bore the judge's salary and (2) whether the statute creating the position demonstrated an intent to extend the position beyond the county's borders. *Id*. at 938. The Court declared the "primary badge" of a State official/employee was that the State paid the official's salary. *Id*. at 939. In *Stambaugh v. Price*, 532 S.W.2d 929 (Tenn. 1976), the Court cited and added to the *Durham* test:

> Where no legislative intent is apparent to create a court with jurisdiction beyond the county; where the county bore the expense of the court, paid the judge's salary, and was entitled to the fees collected; and where 'the overall duties are applicable to the people of the county alone'; it was held that [the challenged official] was a county, not a State, office.

*Id*. at 933. In *Spurlock v. Sumner County*, 42 S.W.3d 75 (Tenn. 2001), the Tennessee Supreme Court relied on the United States Supreme Court's opinion in *McMillian v. Monroe County*, 520 U.S. 781 (1997) (brought under 42 U.S.C. § 1983). *McMillian* considered whether a sheriff was a

4

State or county employee under Alabama law. The Supreme Court stated, a "court's task is to 'identify those officials or governmental bodies who speak with final policy-making authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *Id*. at 784-86. In essence, a court must analyze the official's role functionally, and must apply State law.

In *Spurlock*, the Tennessee Supreme Court considered *McMillian*, *Durham*, and *Stambaugh* in reevaluating whether a sheriff was a State or county employee. The court noted (1) the county paid the sheriff's salary, and (2) the enacting statute suggested an intent to limit the sheriff's jurisdiction within the county. *Id*. at 79-80. At the same time, the sheriff's position was created, and its duties were set out, by State statute. The Court weighed the authorities. It found greater weight in favor of the sheriff as a county employee. *Id*. at 78, 80 (quoting *McMillian*, 520 U.S. at 804) ("we hold that under Tennessee law, [a] 'sheriff locally elected, paid, and equipped, who autonomously sets and implements law enforcement policies operative within the geographic confines of a county, is ordinarily just what he [or she] seems to be: a county official'"). At the same time, the court cited but did not overrule *Dykes v. Hamilton*, 191 S.W.2d 155 (Tenn. 1945) ("the mere fact that a person may hold an important public office whose duties are strictly confined to county affairs, and his salary paid by the county, does not make it a county office").[1]

---

[1] In *Pharris v. Looper*, 6 F. Supp. 2d 720 (M.D. Tenn. 1998), the plaintiffs, former employees of the property assessor ("Assessor") in Putnam County, sued the defendant Assessor and the county for civil rights violations under 42 U.S.C. § 1983. The county argued the State was liable for the lawsuit because the Assessor was a State employee. In support of this contention, the county argued: (1) the Assessor was a constitutionally created office, (2) his qualifications and salary were set by State law, (3) he was State-supervised, and (4) he was permitted by statute to appoint his own staff. *Id*. at 729-30. The district court disagreed, in part because it found the county exercised control over the Assessor's salary, election, vacancies, bond, and recruiting. *Id*. at 730.

In following the example of the above cases, this Court will begin with the Tennessee Code and case law, to evaluate the functions of the Administrator's position, the budgetary burden, the legislative intent, and the jurisdictional limitations.

Tennessee law creates a State Election Commission to oversee State elections and secure the "freedom and purity" of the ballot and participation by all citizens in the electoral process. Tenn. Code Ann. § 2-1-102. The State Election Commission appoints County Election Commissions ("Commissions"), whose five members serve two-year terms. Tenn. Code Ann. § 2-12-101. Commissions are quasi-independent bodies which oversee municipal, county, and State elections within their geographic jurisdiction. *Id.*; *Abercrombie v. Chattanooga*, 313 S.W.2d. 256, 262 (Tenn. 1958) (holding Commissions exist under general law of the State, are not part of any State political sub-division, and are "not an arm of the county government"). Commissions are created by and their powers are defined by the Tennessee Code. They and their staff perform important but ministerial, duties with very limited discretion such as preparing ballots and overseeing elections. *E.g.*, *City of Memphis v. Shelby County Election Comm'n*, 146 S.W.2d 513, 535-36 (Tenn. 2004) ("[n]onetheless, as ministerial officers, the Commission and the Coordinator have limited discretion"); *Shelby County Election Comm'n v. Turner*, 755 S.W.2d 774, 776 (Tenn. 1988) (Commission "has only ministerial duties"); *Peeler v. State ex rel. Beaseley*, 231 S.W.2d 321, 323 (Tenn. 1950) (same). Section 2-12-109 mandates a Commission be funded by the county it serves; however, if a Commission oversees a municipal election, the municipality pays its expenses, and the State pays for special State elections and residential primaries. Tenn. Code Ann. §§ 2-12-108 & 109.

Administrators (amended in 1997 from the term "registrars") are employed by each county's Commission. Section 2-12-201 creates the role and sets out its responsibilities, which are generally

6

to oversee the Commission's daily operations, manage the budget and personnel, maintain voter registration and campaign disclosure records, train and disseminate election information to the public, and advise interested parties on redistricting or reapportionment. The minimum salary for an Administrator is set by State law although the actual dollars come from the county treasury. Tenn. Code Ann. § 2-12-208. The State will pay a portion of the salary if the Administrator passes an annual certification exam prepared by the State Election Commission and the Coordinator of Elections. Tenn. Code Ann. §§ 2-12-202(b) & 209. If the county accepts State funds, a Commission is entitled to at least the same appropriations level from the county as the preceding year. If a county refuses to commit sufficient funds, a Commission may request an administrative hearing from the Coordinator of Elections. Tenn. Code Ann. § 2-12-209(c). This salary-sharing provision does not automatically confer on an Administrator the status of a State employee. Tenn. Code Ann. § 2-12-210. Administrators and Commission members) are subject to county purchasing and budgetary laws.[2]

On the other hand, in somewhat dated opinions, the Attorney General of Tennessee has construed Commissions as being "hybrid agencies," bearing both State and county responsibilities. The Attorney General's office decided Administrators were State employees for purposes of workers compensation eligibility. Tenn. Op. Atty. Gen. No. 85-017, 1985 WL 193601 (Jan. 17, 1985) (citing cases in which State judges had held Commissions and Administrators were State officers and could not be controlled or supervised by a county: *Tennessee ex rel. Wayne County Election Comm'n v.*

---

[2] Also weighing on the county employee side of the debate, Tenn. Code Ann. § 8-17-102 (Ethical Standards for Officials and Employees) states "Furthermore, for the purpose of this chapter, the county election commission shall be considered an instrumentality of county government; and the administrator of elections and other employees of the election commission shall be considered county employees."

*Wayne County*, no cite given, opinion by Judge Matherne (Tenn. Ct. App. Dec. 1, 1978); *Tennessee ex rel. Hawkins County Election Comm'n v. Hawkins County Bd. of Comm'nrs*, no cite given, opinion by Judge Franks (Tenn. Ct. App. Apr. 24, 1981)). Because Commissions are appointed by, and may only removed by, a State body, and because baseline salaries are set by statute, the Attorney General concluded, "the usual provisions of law involving county employees and fiscal matters do not apply to the [Commissions], and the employees of the commission are not county employees." Tenn. Op. Atty. Gen. No. 78-266, 1978 WL 27206 (June 27, 1978). Another opinion determines Commission members to be State officers such that they could not concurrently serve as elected officials or public employees. Tenn. Op. Atty. Gen. No. 78-139, 1978 WL 27083 (Mar. 23, 1978).

    **C.**    **Common Law Agency Test**

Black's Law Dictionary defines an "employee" as someone who "works in the service of another . . . under which the employer has the right to control the details of work performance." In fact, the employer's right to control the employee has long been the touchstone for determining whether an employment relationship exists. *Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584, 586 (Tenn. 1991); *Carver v. Sparta Elec. Sys.*, 690 S.W.2d 218, 220 (Tenn. 1985); *Arledge v. Omega Meats, Inc.*, 2003 WL 23471544, * 2 (E.D. Tenn. Dec. 4, 2003). The employer's right is to control both the ends and the manner and means by which the business is done. *See*, *e.g.*, Restatement (Second) of Agency § 2; C.J.S. Employee § 8. The employer's power to hire and fire is essential to and constitutes indicia of an employment relationship; other factors indicative of the employer's right to control are the employer's right to establish work boundaries, to rebuke/reward an employee, to set working hours, to assign duties, and to create job security. C.J.S. Employee §

8

8 (collecting cases); *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-24 (1992).

In evaluating whether a hired party is an independent contractor or an employee, in federal employment cases, the United States Court of Appeals for the Sixth Circuit applies the common law agency test. *E.g.*, *Johnson v. City of Saline*, 151 F.3d 564, 568 (6th Cir. 1998) (ADA case) (citing *Darden*, 503 U.S. at 322). The analysis, while not binding here, is instructive. The common law test requires consideration of numerous factors, such as "the hiring party's right to control the manner and means by which the product is accomplished," "the hiring party's right to assign additional projects," and "the hired party's role in hiring and paying assistants." *Simpson v. Ernst & Young*, 100 F.3d 436, 443 (6th Cir. 1996) (citing *Darden*, 503 U.S. at 323-24). Applying such factors, the court in *Shah v. Deaconess Hosp.*, 355 F.3d 496 (6th Cir. 2004) found a surgeon was an independent contractor and not a hospital employee, because there was no evidence the hospital could control "the manner and means" of the surgeon's performance, and there was no evidence the hospital could "interfere with [the surgeon's] medical discretion or otherwise." *Id*. at 500.

### III. DISCUSSION

Clearly, the authorities are split. As the Tennessee Supreme Court held in *Spurlock*, this Court must determine whether the greater weight of authority supports defining Administrators, Plaintiff specifically, as State or county officials. 42 S.W.2d at 78. After examining the Tennessee Code, relevant case law, and the persuasive Attorney General opinions, the Court concludes an Administrator of Elections under Tennessee law is a State official, not a county official, and Defendant's motion must be **GRANTED**.

The first criteria this Court must consider is who bears Plaintiff's salary expense. It is clear

9

the county does, as evidenced by Plaintiff's paystub (File No. 13-2), and by Sections 2-12-208 & 209 of the Tennessee Code. Plaintiff also received life and health insurance and retirement benefits from Defendant (File No. 13, p. 2). Yet the baseline Administrator salary is set by State law. Tenn. Code Ann. § 2-12-208. The State sometimes pays its share of the salary cost, although its payments are not to be construed as rendering an Administrator as a State official. Tenn. Code Ann. §§ 2-12-209 & 210.[3] A county may not reduce an Administrator's salary – or the Commission's budget, for that matter – beyond the prior year's; in short, the county's budgetary discretion is clipped. *Id.*; *see also* Tenn. Op. Atty. Gen. No. 78-266. Though Plaintiff does not wear the "primary badge" of a State official, *Durham*, 333 S.W.2d at 939, this criteria does not contribute overwhelmingly to the county employee side of the scale because of the county's limited discretion in obligating its funds towards a Commission or an Administrator.

The second criteria to consider is Plaintiff's jurisdiction as an Administrator, i.e. whether his authority exists beyond the county's bounds. Plaintiff's role was to manage the day-to-day operations of the Bradley County Election Commission. It appears his authority was restricted within the county's geographic limits. At the same time, *Abercrombie* held a Commission was "not an arm of the county government." 313 S.W.2d. at 262. Though important, this factor is not dispositive.

---

[3] This would be strong evidence of Plaintiff's position as a county employee, but for the limiting text in Section 2-12-210 ("[n]othing in Acts 1986, Ch. 930") and *McMillian*'s admonition requiring federal courts to perform independent evaluations of whether a challenged official is a State or county employee. *See McMillian*, 520 U.S. at 586 ("This is not to say that State law can answer the question for us by, for example, simply labeling as a State official an official who clearly makes county policy. But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.").

The most significant factor in evaluating whether Plaintiff is a State employee appears in *Stambaugh*'s restatement of the *Durham* test. The Tennessee Supreme Court found where "the overall duties are applicable to the people of the county alone," the individual was a county official. 532 S.W.2d at 933. Plaintiff's duties were not owed to the county alone. Plaintiff helped manage federal, State, county, and municipal elections. *Parker v. Bedford County Election Comm'n*, 2006 WL 622775, *4 (Tenn. Ct. App. Mar. 14, 2006) ("[t]he election administrator and chief staff person for the county election commission . . . has statutory duties to the public and to candidates for public office. [The] duties include the '[c]ompilation, maintenance and dissemination of information to the public, the candidates, the voters, the press and all inquiring parties in regard to all aspects of the electoral process on all governmental levels.' [An Administrator] is also charged with '[h]aving knowledge of all current laws pertaining to the election process and any changes mandated by the general assembly, and apprising the election commission, office staff, candidates, the press and the public in general of this information.") (citing Tenn. Code Ann. § 2-12-201(a)(9) & (12)).

In *Pharris*, the federal district court found an Assessor was not a State employee because the county controlled his election, vacancies, the setting of a bond, and recruiting. 6 F. Supp. 2d at 730. On the contrary, Plaintiff was employed by the Bradley County Election Commission, the members of which were in turn appointed and removed by the State Election Commission. Tenn. Code Ann. § 2-12-101. Vacancies would be filled by the State Election Commission. Tenn. Code Ann. § 2-12-106. In other words, Defendant had little control over Plaintiff's selection. If everyone above Plaintiff, responsible for his hiring and firing, was a State official and appointed by the State, it

would be unfair to hold Defendant liable for actions taken without its input, direction or sway.[4]

Finally, looking at the traditional indicia of employment, i.e. whether Defendant exercises a right of control over Plaintiff, it is even more obvious Plaintiff is a State employee, despite the "payor" on his paystub. By statute, Defendant was not able to hire or fire Plaintiff, abolish Plaintiff's position, or even lower Plaintiff's compensation below the prior year's. It appears most of Plaintiff's duties are set out in Tenn. Code Ann. § 2-12-201, so Defendant could not set Plaintiff goals or the "manner and means" by which to achieve such goals. The Commission, not Defendant County, was responsible for employing assistants for Plaintiff. *Id.* In sum, applying the common law agency test and the traditional test for determining whether an employment relationship exists, Plaintiff is clearly controlled by the Commission, State law, and ultimately, the State. The county has little control over his actions and work-product.

## IV.    SOVEREIGN IMMUNITY

In its motion to dismiss Defendant argues this Court does not have subject matter jurisdiction over this dispute, because if Plaintiff is a State employee, Tennessee's sovereign immunity bars a lawsuit under FMLA's "self care" provision or under the ADA (File No. 12, p. 4). Plaintiff fails to address this argument in his response. This Court also declines to address the argument – the Court will **DISMISS** Plaintiff's complaint on the grounds Defendant is not the proper defendant, as Defendant is not Plaintiff's employer. However, to rule on the sovereign immunity argument would

---

[4] *But see Loveday v. Sevier County*, 2000 U.S. Dist. LEXIS 4017 (E.D. Tenn. Mar. 20, 2000) (Phillips, M.J.) (assuming without discussion an Administrator to be a county employee).

be to render an advisory opinion. "The jurisdiction of federal courts is limited by Article III of the United States Constitution to consideration of actual cases and controversies, therefore federal courts are not permitted to render advisory opinions." *Adcock v. Firestone Tire & Rubber Co.*, 822 F.2d 623, 627 (6th Cir. 1987).

**V.     CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Defendant's motion to dismiss (Court File No. 10). An order will enter.

*/s/*
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**